**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| CRAIG TOBELER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | 3:09-cv-0309-ECR (RAM) <br><br> **REPORT AND RECOMMENDATION <br> OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff Craig Tobeler's (Plaintiff) Motion to Remand the decision of the Commissioner. (Doc. #16.)[1] Defendant Commissioner opposed the motion and filed a Cross-Motion for Summary Judgment to affirm the Commissioner's final decision. (Doc. #19.) Plaintiff replied. (Doc. #25.) After a thorough review, the court recommends that Plaintiff's motion be denied, and Defendant's motion be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the Commissioner's final decision, Plaintiff was a forty-eight-year-old man who had not graduated from high school but completed the general education development (GED) course. (Tr. 30-31.) Plaintiff completed a vocational training program in heating, air conditioning, and refrigeration as well as a flooring apprenticeship, and

---

[1] Refers to court's docket number.

worked on and off in the carpet and flooring industry until 1997, after which time he had a few side jobs. (*Id.* at 30-33.) He has not worked since approximately 2003. (*Id.* at 33.) Plaintiff filed an application for Disability Insurance Benefits (DIB) on January 18, 2006, asserting that depression, anxiety disorder, attention deficit disorder (ADD), and attention deficit hyperactivity disorder (ADHD) caused him to be permanently and completely disabled since January 1, 1999. (*Id.* at 78-80, 90-91.) The date last insured is September 30, 1999. (*Id.* at 28-29.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 50-53, 58-61.) On April 22, 2007, Plaintiff requested a hearing to challenge the Commissioner's determination. (*Id.* at 62.)

Plaintiff, represented by counsel, appeared and testified at the hearing before the Administrative Law Judge (ALJ) on March 19, 2008. (Tr. 25-43, 62.) The ALJ followed the five-step procedure for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on June 25, 2008, finding Plaintiff "not disabled" as defined in the Social Security Act and denying the claim for DIB. (*Id.* at 9-20.) Plaintiff appealed the decision, and the Appeals Council denied review. (*Id.* at 1-4.) Thus, the ALJ's decision became the final decision of the Commissioner. (*Id.*)

Plaintiff now appeals the decision to the district court, in which he argues: (1) the ALJ erred by ignoring lay witness evidence; (2) the ALJ improperly rejected the opinion of a treating doctor; (3) the ALJ erroneously rejected Plaintiff's credibility; (4) the ALJ failed to make complete findings at Step 2; and (5) the ALJ erred by failing to take vocational expert testimony. (Pl.'s Mot. for Remand (Doc. # 16).)

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)(internal quotation marks and citation omitted). "It means such relevant evidence as

1    a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995)(citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.* at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986)(citations omitted); 20 C.F.R. § 404.1512(a). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months …." 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

#### A. SEQUENTIAL PROCESS AND ALJ FINDING

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920. If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

In the first step, the Commissioner determines whether the claimant is engaged in "substantially gainful activity"; if so, a finding of nondisability is made and the claim is denied. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b). If the claimant is not engaged in substantially gainful activity, the Commissioner proceeds to step two. 20 C.F.R. § 416.920(a).

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520. If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity. 20 C.F.R. § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f). If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner, *Yuckert*, 482 U.S. at 144, to establish, in step five, that the claimant can perform work available in the national economy. *Yuckert*, 482 U.S. at 141-42; *see also* 20 C.F.R. §§ 404.1520(e), 404.1520(f), 416.920(e), 416.920(f). Application of steps four and five requires the Commissioner to review the claimant's residual functional capacity and the physical and mental demands of the work he or she did in the past. 20 C.F.R. § 404.1520(f),(g). "Residual functional capacity" (RFC) is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past

1  work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at
2  141-42. If the Commissioner establishes that the claimant can do other work which exists
3  in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566.

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff did not engage in substantial gainful activity during the period of his alleged onset date of January 1, 1999 through his date last insured of September 30, 1999. (Tr. 14.) At step two, the ALJ found that it was established that Plaintiff is severely impaired by a depressive disorder which caused significant limitation in Plaintiff's ability to perform basic work activities. (*Id.*) At step three, the ALJ concluded through the date last insured that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments. (*Id.* at 15.) At step four, the ALJ determined through the date last insured that Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c), but was unable to return to any of his past relevant work. (*Id.* at 15-19.) At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.* at 19.) In conclusion, the ALJ determined that a finding of "not disabled" was directed by Medical-Vocational Rule 203.31. (*Id.* at 20.)

**B.    EVALUATION OF LAY WITNESS EVIDENCE**

Plaintiff asserts the ALJ improperly failed to consider and address lay witness evidence from Plaintiff's wife and former employer. (Doc. #16 10-12.) Defendant contends the lay witness evidence was neither relevant nor probative of the relevant time period and is therefore not competent evidence required to be discussed by the ALJ. (Def.'s Cross-Mot. for Summ. J. (Doc. # 19) 6-7.) Defendant further argues that the failure to consider the lay witness testimony was harmless error given the substance of the reports and the ALJ's finding regarding Plaintiff's credibility. (*Id.*)

5

Lay witness testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)(emphasis omitted) (citations omitted). The ALJ can properly reject lay witness statements if there are inconsistencies between the statements and the medical evidence and when lay witness statements describe symptoms that are not documented in the claimant's medical records. *Bayliss*, 427 F.3d at 1218 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Plaintiff's wife completed a third-party report describing how Plaintiff's impairments limited his ability to function. (Tr. 129-136.) Plaintiff's wife stated that Plaintiff starts her vehicle, prepares her coffee in the morning, and is able to do chores such as vacuuming, delivering bills, shopping, and walking and feeding the dog, but on some occasions he is not able to get out of the house, or cannot do these activities because of mental anxiety or depression. (*Id.* at 129-133.) She indicated that he has difficulty functioning in public places and with maintaining his temper. (*Id.* at 130.) Plaintiff spends time with others skiing, talks with family a couple of times a month, and does not have problems getting along with family, friends and neighbors. *(Id.* at 133-134.) Plaintiff sometimes needs to be reminded to go places, is unable to control his mind, experiences memory loss, has difficulty concentrating, confuses instructions, and has conflicts with others. (*Id.*) Plaintiff has been fired or laid off from a job because of his temper and loudness. (*Id.* at 135.) He experiences anxiety/panic disorders on a daily basis, and there are days when Plaintiff will sleep all day and has no motivation. (*Id.* at 135-136.)

Plaintiff's former employer, George Bandy, submitted a letter regarding his knowledge of Plaintiff's problems. (Tr. 137-140.) Mr. Bandy has known Plaintiff for twenty-five years. (*Id.* at 138.) Plaintiff went to work for Mr. Bandy's flooring company in the early 1980's. (*Id.*) About a year into this employment, Mr. Bandy started receiving complaints about Plaintiff's temper from other employees and customers. (*Id.*) There was an instance where

6

Plaintiff ran someone off the road in a company vehicle and knocked their window out. (*Id.* at 139.) Plaintiff became more violent in later employment periods with Mr. Bandy. (*Id.*) Mr. Bandy admits that he had little contact with Plaintiff until he received the request that he write a letter on Plaintiff's behalf. (*Id.* at 140.)

The ALJ failed to address the lay witness statements of Plaintiff's wife and former employer. In hindsight, the Commissioner suggests that the statements were irrelevant because they did not specifically address the relevant time period. The ALJ has erred when he fails to discuss lay witness testimony that is favorable to the claimant. *See Stout,* 454 F.3d at 1056 (citations omitted). The Ninth Circuit has stated: "[W]e, along with our sister circuits, have consistently reversed the Commissioner's decisions for failure to comment on such competent testimony." *Id.*

Because the ALJ completely ignored lay witness testimony regarding how Plaintiff's impairment limited his ability to work, there was nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported. *See Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1163 (9th Cir. 2008). The ALJ's failure to address the lay witness statements or to make an express determination and set forth reasons for disregarding the statements was in error. Under these circumstances, a heightened harmless error standard applies, such that "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Here, if fully credited, the lay witness evidence, when viewed in conjunction with the evidence the ALJ properly considered, does not undermine the ALJ's determination of no disability. Mr. Bandy's letter merely corroborates Plaintiff's own statements that he had a temper which resulted in losing his job. (Tr. 32-33.) Mr. Bandy admitted that he has had little contact with Plaintiff until the time it was requested that he write a letter (*Id.* at 140), indicating that he does not have particular knowledge regarding Plaintiff's limitations during the period at issue. In addition, the limitations reasonably supported by Plaintiff's wife's

7

1  statement corroborated Plaintiff's statements and were covered in the ALJ's findings. The
2  ALJ recognized that Plaintiff had a severe impairment in the form of a depressive disorder
3  which caused significant limitation on Plaintiff's ability to perform basic work activities. (Tr.
4  14.) The ALJ noted that Plaintiff had been seen for depression, was not sleeping well, and did
5  not want to deal with his friends. (*Id.* at 16.)

6  Moreover, the court has found below that the ALJ properly rejected the opinion of
7  Plaintiff's treating physician, Dr. Ridenour (*infra*, III.C), and properly discredited Plaintiff's
8  credibility (*infra*, III.D). The ALJ's legally sufficient adverse credibility determination as to
9  Plaintiff's own statements regarding the extent of his impairments supports a finding of
10 harmless error because the ignored lay witness evidence merely corroborated Plaintiff's own
11 account. In *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006), the court recognized
12 that there are cases in which the failure to consider lay witness testimony is harmless.
13 *Robbins*, 466 F.3d at 885. There, the court determined that the ignored lay witness
14 testimony of the claimant's son directly supported the claimant's own testimony and claim
15 for disability, but determined that the ALJ had not made a legally sufficient adverse
16 credibility finding with respect to the claimant, and as a result the error could not be found
17 to be harmless. *Id.* Here, because the ignored lay witness testimony of Plaintiff's wife and
18 former employer, even if accepted as true, merely corroborated Plaintiff's own testimony,
19 which was deemed incredible by the ALJ, the error in failing to discuss the lay witness
20 evidence is harmless. Remand would therefore be futile. Consequently, the court is confident
21 that a reasonable ALJ, fully crediting the testimony of the lay witnesses, would not have
22 reached a different disability determination.

23 **C.   REJECTION OF TREATING PHYSICIAN'S OPINION**

24 Next, Plaintiff argues that the ALJ improperly rejected the opinion of his treating
25 physician, Dr. Ridenour. (Doc. # 16 12-16.) Defendant, on the other hand, contends that
26 the ALJ's rejection of Dr. Ridenour's medical opinion was properly supported by clear and
27 convincing reasons. (Doc. # 19 7-10.)

28

8

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). On the other hand, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. The ALJ need not accept the opinion of any medical source, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(citation omitted).

The federal regulations also provide, as a general rule, that more weight is given to treating physicians' opinions as opposed to non-treating physicians. 20 C.F.R. § 416.927(d). This is because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s)…" *Id*. In determining the weight of a treating physician's opinions, the regulations require the ALJ to consider the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the supportability of the physician's opinions; the consistency of the opinion with the record; and any specialization of the physician and other factors. 20 C.F.R. § 416.927(d). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as whole; the specialty of the physician providing the opinion; and "other factors" such as the degree of understanding a physician has of the SSA's disability programs and their evidentiary requirements and the degree of his or her familiarity with other information in the record. 20 C.F.R. § 404.1527(d)(3)-(6).

Here, Dr. Ridenour's opinion is uncontroverted and entitled to great weight. Moreover, because Dr. Ridenour's opinion is that of a treating physician, the ALJ could reject it only on the basis of specific, clear and convincing reasons, supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216 (citation omitted).

1   Dr. Ridenour completed a report dated January 31, 2006, giving his opinion regarding
2   Plaintiff's ability to do work-related activities. (Tr. 214-216.) Dr. Ridenour rated Plaintiff's
3   mental ability and aptitude to do work in almost all categories as poor to none as a result of
4   Plaintiff's anxiety, bipolar disorder, and because he can barely function outside of his home.
5   (*Id.* at 214-215.) Dr. Ridenour also noted that Plaintiff has high anxiety, severe anger
6   disorder and poor social interaction, but has the capability to manage his benefits. (*Id.* at
7   215, 244.) Dr. Ridenour observed that Plaintiff could not sit during a visit; could not hold
8   down a job; and has gotten out of his car to yell at other drivers. (*Id.* at 244.) Finally, Dr.
9   Ridenour opined that Plaintiff would not be able to sustain "simple work," and little if any
10  improvement is expected with treatment. (*Id.*)

11  Dr. Ridenour also submitted a letter dated March 31, 2008 regarding Plaintiff's
12  condition. (Tr. 269.) He opined that Plaintiff suffers from bipolar disorder and severe anger
13  disorder and states that these problems were noted in September 1999, but have gone on
14  much longer. (*Id.*) Dr. Ridenour stated that Plaintiff has not been able to be a part of the
15  work force because he cannot be away from his home for long and is unable to work with
16  others. (*Id.*) He commented on an incident where Plaintiff got out of his car and pounded
17  on another car's window and screamed at the driver, and stated that sometimes Plaintiff's
18  depression is so bad that he stays in bed. (*Id.*) Finally, Dr. Ridenour opined that
19  improvement in Plaintiff's mental status is doubtful. (*Id.*)

20  In this case, the ALJ properly discredited the opinion of Plaintiff's treating physician,
21  Dr. Ridenour, with specific, clear and convincing reasons. The first reason the ALJ gave for
22  rejecting Dr. Ridenour's opinion was that Dr. Ridenour is an internist and not a psychiatrist
23  or psychologist, and treatment of a mental impairment was not within his area of specialty.
24  (Tr. 17.) This circuit has expressly held that it is not necessary that the physician who
25  presents evidence of mental illness be a board-certified psychiatrist. *Sprague v. Bowen*, 812
26  F.2d 1226, 1232 (9th Cir. 1987). However, the court finds that this error was harmless as the

ALJ provided other specific, clear and convincing reasons for rejecting Dr. Ridenour's opinion.

The second reason the ALJ gave for rejecting Dr. Ridenour's opinion was that he was at one time censured for his prescription practices. (Tr. 17.) Plaintiff argues that this reason is not supported by the record, however, the Commissioner correctly points out that the State agency physician who reviewed Plaintiff's medical records noted Dr. Ridenour's censure. (*Id.* at 229.) This reason for rejecting Dr. Ridenour's opinion is therefore supported by substantial evidence in the record.

The third reason the ALJ gave for rejecting Dr. Ridenour's opinion was that he contradicted his own reports and treatment records. (Tr. 16-17.) The ALJ pointed out that Dr. Ridenour described Plaintiff as experiencing "road rage"; yet, stated that the claimant was not a danger to himself or others. (*Id.* at 17.) Another contradiction noted by the ALJ was that Dr. Ridenour opined that Plaintiff was unable to work with others or be away from his home, yet in treatment notes dated March 12, 1999, the claimant reported that he was going golfing, which does not indicate a person who cannot be away from home or get along with others. (*Id.*) The ALJ noted that Plaintiff's earnings records showed substantial gainful earnings in 2000, contradicting Dr. Ridenour's opinions about Plaintiff's ability to return to the work force. (*Id.*)

While Dr. Ridenour opined that Plaintiff had poor or no ability to function in nearly every functioning area, he opined that Plaintiff still had the ability to manage his own funds. (Tr. 214-216, 241-244.) Dr. Ridenour's treatment notes in April 1999 stated that Plaintiff had big mood swings, decreased concentration, forgetfulness, and depression, but notes in July 1999 said Plaintiff's affect had improved and his insight was better. (*Id.* at 255-256.) Dr. Ridenour's treatment notes in September 1999 state that Plaintiff was doing well, getting out, playing golf, and that his affect and insight were good. (*Id.* at 255.) In November 1999, Dr. Ridenour's treatment notes state that Plaintiff was doing great. (*Id.* at 254.) Dr. Ridenour continued to note that Plaintiff's insight and affect were good in December 1999. (*Id.*) These

1 treatment notes clearly contradict Dr. Ridenour's opinion in his 2006 report that Plaintiff's
2 mental abilities are poor to none in nearly all categories which Dr. Ridenour attributed to
3 Plaintiff barely being able to function outside his home. (*Id.* at 214-216, 241-244.)

4       The contradictions noted by the ALJ are supported by substantial evidence in the
5 record. Moreover, the ALJ's decision must be upheld if the evidence is susceptible to more
6 than one rational interpretation. *Orteza*, 50 F.3d at 749. Accordingly, the ALJ sufficiently
7 set forth specific, clear and convincing reasons for rejecting Dr. Ridenour's opinion.

8 **D.  PLAINTIFF'S CREDIBILITY**

9       Plaintiff next argues that the ALJ failed to properly evaluate his credibility. (Doc. #
10 16 16-18.) Defendant contends that the ALJ properly considered Plaintiff's credibility and
11 provided specific, legitimate reasons for rejection. (Doc. # 19 10-12.)

12       "[A] claimant's credibility becomes important at the stage where the ALJ is assessing
13 residual functional capacity, because the claimant's subjective statements may tell of greater
14 limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147
15 (9th Cir. 2001)(citing Social Security Rule 96-7p (1996)). Thus, a claimant's credibility is
16 often crucial to a finding of disability. The ALJ is responsible for determining credibility.
17 *Meanel*, 172 F.3d at 1113.

18       In general, when deciding to accept or reject a claimant's subjective symptom
19 testimony, an ALJ must perform two stages of analysis: an analysis under *Cotton v. Bowen*,
20 799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the
21 claimant's testimony regarding the severity of his or her symptoms. *Smolen v. Chater*, 80
22 F.3d 1273, 1281 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529 (adopting two-part test). "If
23 the claimant produces evidence to meet the *Cotton* test and there is no evidence of
24 malingering, the ALJ can reject the claimant's testimony about the severity of his or her
25 symptoms only by offering specific, clear, and convincing reasons for doing so." *Smolen*, 80
26 F.3d at 1281 (citation omitted).

12

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)(citing 42 U.S.C. § 423(d)(5)(A)). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis original); *see also* 20 C.F.R. § 404.1529(a)-(b).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell,* 947 F.2d at 345 (quoting *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). When analyzing credibility, an ALJ may properly consider medical evidence in the analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004)(holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence). An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and

other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ determined Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms; therefore, Plaintiff has satisfied the first prong of the *Cotton* test. (Tr. 18.) There is no evidence of malingering and the ALJ made no such finding. Accordingly, in order to reject Plaintiff's testimony regarding the severity of his depression, the ALJ must offer specific, clear and convincing findings supported by the record.

Plaintiff claimed that he suffered from severe depression which results in confusion, poor memory, difficulty concentrating, fits of anger, and panic attacks. (Tr. 91.) The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, and determined that Plaintiff's RFC provided that he was able to perform a full range of medium work pursuant to Medical-Vocational Rule 203.31. (Tr. 18, 20.) Under Medical-Vocational Rule 203.00, "[t]he functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work." 20 C.F.R. pt. 404, subpt. P, app. 2.

The ALJ offered sufficiently specific reasons for rejecting Plaintiff's credibility. The ALJ's first reason for rejecting Plaintiff's credibility was that Plaintiff's daily activities including driving a vehicle, running errands, working in his backyard and playing golf did not indicate a disabling level of impairment of Plaintiff's RFC. (Tr. 18.) Daily activities are grounds for an adverse credibility finding if the Plaintiff can perform physical functions that transfer to the workplace. *Orn v. Astrue*, 495 F.3d 625, 636, 639 (9th Cir. 2007) (citations omitted); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (giving the following example: "[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). However, the Ninth Circuit has recognized that "[t]his line of reasoning has

14

its limits: The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair,* 885 F.2d at 603 (citations omitted). There are two ways that daily activities can form the basis of an adverse credibility determination: (1) the daily activities contradict the claimant's other testimony; or (2) the "claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). If the ALJ is relying on the second ground, he or she must make "'specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (citation omitted).

Here, the ALJ's adverse credibility determination relied on the first ground- that Plaintiff's daily activities contradicted his other statements regarding his limitations. Plaintiff's claims that he could not be away from his home, was confused, and had difficulty concentrating, are contradicted by Plaintiff's activities of playing golf, working in the yard, driving a vehicle, and running errands. (Tr. 188, 254-256.) Thus, the ALJ's reasoning here was proper.

The ALJ's second and third reasons for rejecting Plaintiff's credibility were that Plaintiff's description of the severity of his symptoms was contradicted by the fact that when Plaintiff was seen for follow-up visits in March and April 1999, he reported feeling better, with less anxiety, less panic, and less co-dependence, better insight and affect, and was getting out. (Tr. 18.) These reasons are supported by substantial evidence in the record. (*Id.* at 188, 254-256.)

The ALJ's fourth reason for rejecting Plaintiff's credibility was that Dr. Ridenour's notes indicated that Plaintiff was working full-time from November 1999-March 15, 2000. (Tr. 18.) While Plaintiff points out that this was only for a short period of time, it does serve to contradict Plaintiff's claims as to the severity of his disability.

The ALJ's fifth reason for rejecting Plaintiff's credibility was that from June 21, 2000 to the end of 2000, there were only five appointments, showing medications but no progress

15

notes, indicating that Plaintiff was stable and doing okay. (Tr. 18.) The ALJ's sixth reason for rejecting Plaintiff's credibility was that there are scant treatment notes regarding Plaintiff's impairments during the period at issue and no treatment notes from a mental health professional. (*Id.*) While lack of medical evidence cannot form the sole basis for discounting credibility, it is a factor the ALJ may consider in his credibility analysis. *Burch,* 400 F.3d at 681. The ALJ properly used the lack of objective medical evidence for the period at issue as a factor to reveal that treatment records were not consistent with Plaintiff's asserted symptoms or limitations.

The ALJ's seventh reason for rejecting Plaintiff's credibility was that no physician opined that listing level impairments were met or equaled for the relevant time period. (Tr. 18.) Plaintiff argues that the ALJ ignored the opinion of Dr. Ridenour, however, this court found (*supra*, III.C) that the ALJ properly rejected Dr. Ridenour's opinion. Therefore, this reason is supported by substantial evidence.

The ALJ's eighth and final reason for rejecting Plaintiff's credibility was that the objective evidence of Plaintiff's medical record, for the relevant time period, did not establish impairments likely to produce disabling pain or other limitations as alleged for a period of twelve or more continuous months. (Tr. 18.) Plaintiff's earning records establish that he engaged in substantial gainful activity in 2000 (*Id.* at 84), supporting the ALJ's determination that Plaintiff's impairments were not disabling for the requisite duration period of twelve continuous months. 20 C.F.R. § 404.1509. Moreover, the medical records do not reveal an impairment that was disabling for a continuous period of twelve months.

Although the evidence may offer a more favorable interpretation to Plaintiff, the ALJ's interpretation is rational, and the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680-81 (citation omitted). Questions of credibility are for the ALJ to decide, and "where…the ALJ has made specific findings justifying a decision to disbelieve an allegation…and those findings are supported by substantial evidence in the record, [the court's] role is not to second guess that

16

1 decision." *Fair*, 885 F.2d at 604.  Therefore, the court finds that the ALJ did not commit legal error, and substantial evidence supports his adverse credibility determination.

### E. ALJ'S FINDINGS AT STEP TWO

Plaintiff argues that the ALJ failed to make complete findings at Step Two. (Doc. # 16 18-19.)  Specifically, Plaintiff asserts that the ALJ erred in failing to make any findings with respect to an evaluation of Plaintiff's other psychological disorders (bipolar disorder, anxiety disorder, anger disorder, agoraphobia, impulse disorder, and violence) and only made a finding with respect to Plaintiff's depression. (*Id*.)  Defendant contends that it was Plaintiff's burden to establish a disabling impairment on or before his date last insured, September 30, 1999, and Dr. Ridenour only diagnosed Plaintiff with depression during the relevant time period.  (Doc. # 19 12-13.)

Plaintiff carries the initial burden of establishing that his severe mental impairments significantly limit his ability to perform basic work activities. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  He must provide medical evidence showing how severe his mental impairments are during the time disability is alleged.  20 C.F.R. §§ 404.1512(c), 416.912(c).

The Commissioner is correct that the record only reflects a diagnosis of depression during the relevant time period.  While there is a notation about anxiety, there is nothing in the record to indicate this or any of the other psychological disorders were a severe mental impairment that significantly limited Plaintiff's ability to perform basic work activities.  Therefore, the ALJ did not err by failing to make findings with respect to an evaluation of Plaintiff's other psychological disorders.

### F. VOCATIONAL EXPERT TESTIMONY

Lastly, Plaintiff argues that the ALJ erred by failing to take vocational expert testimony. (Doc. # 16 19-20.)  Plaintiff asserts that it is inconsistent for the ALJ to find at step 2, that Plaintiff's depression is a severe impairment which has vocational ramifications, and then not include limitations based on this impairment in Plaintiff's RFC assessment because a depressive disorder impairment would likely create non-exertional limitations.  (*Id*.)

17

Plaintiff reasons that non-exertional limitations call for the testimony of a vocational expert to opine regarding the effects of the limitations on the occupational base at step 5. (*Id*. at 20.) Finally, Plaintiff contends that the ALJ should not have relied on the Medical-Vocational Guidelines (the Grids) because of the non-exertional limitations. (*Id*.)

Defendant argues that Plaintiff failed to provide credible objective medical evidence that Plaintiff had non-exertional limitations during the relevant time period, so there was no error in not considering vocational expert testimony, and reliance on the Grids was proper. (Doc. # 19 13-14.)

A step five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). "To assist in the step-five determination, the Social Security Administration established [the Grids], which consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Id*. (citation omitted); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b). "When the grids match the claimant's qualifications, the guidelines direct a conclusion as to whether work exists that the claimant could perform." *Hoopai*, 499 F.3d at 1075 (citation omitted). If the grids do not match all of the claimant's qualifications, the ALJ may use them as a framework to make a determination of what work exists or the ALJ may obtain testimony of a vocational expert. *Id*.; *see also* 20 C.F.R. pt. 404, subpt. P, app. 2. The grids can be used if there are both exertional and non-exertional limitations present. *Hoopai*, 499 F.3d at 1075; *see also Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) ("the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids.").[2] The Grids are inapplicable and a vocational expert is required only "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the

---

[2] "A non-exertional impairment is an impairment 'that limits [the claimant's] ability to work without directing affecting his [ ] strength.'" *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (citation omitted).

range of work permitted by the claimant's exertional limitations." *Hoppai,* 499 F3d at 1075 (citation omitted). While depression has been found to be a non-exertional disorder, mild or moderate depression is not a sufficiently severe non-exertional limitation that will preclude an ALJ's reliance on the Grids and require the assistance of a vocational expert. *Id.* at 1076-77.

The fact that a non-exertional mental impairment is found to be "severe" at the second step does not render it "sufficiently severe" to require the use of a vocational expert. *Hoopai*, 499 F.3d at 1076. In fact, the non-exertional limitation must be more than "severe" at step two to require the use of a vocational expert. *Id.* This is because the step two determination is "merely a threshold determination of whether the claimant is able to perform his past work." *Id.* At step five, there must be a "significant and 'sufficiently severe' non-exertional limitation not accounted for in the grid" and "the severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two…" *Id.*

Plaintiff's argument that the ALJ's reliance on the Grids was in error and that the ALJ was required to obtain testimony from a vocational expert lacks merit. Substantial evidence supports the ALJ's determination that Plaintiff's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert. The ALJ properly rejected the opinion of Plaintiff's treating physician, Dr. Ridenour (*supra,* III.C), and properly discredited Plaintiff's own statements regarding his limitations (*supra*, III.D). The ALJ found that Plaintiff had mild restriction in activities of daily living (Tr. 15); mild difficulties in social functioning and with regard to concentration, persistence or pace (*Id.*); and no episodes of decompensation (*Id.*). Based on all the evidence in the record the ALJ concluded that through the date last insured, Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (*Id.*) In *Hoopai*, the plaintiff was similarly found to have moderate limitations, and the court determined that such moderate

limitations would not significantly limit plaintiff's ability such that vocational testimony was required. *Hoopai*, 499 F.3d at 1077.

Accordingly, the ALJ did not commit error in his use of the Grids as a framework in his determination.

## IV.  CONCLUSION

After carefully reviewing the record as a whole, the district court should find there is substantial evidence to support the ALJ's determination.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (Doc. #16) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion for Summary Judgment (Doc. #19) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

DATED:  October 12, 2010.

_____
UNITED STATES MAGISTRATE JUDGE